MRS. C. E. WHITE AND HUSBAND, ANDREW WHITE, v.
MRS. M. L. GOODWIN.

(Filed 5 December, 1917.)

**Wills—Devise—Husband and Wife—Tenants in Common—"Heirs of Body"—
Statutes—Rule in Shelley's Case.**

A devise of land to testator's son-in-law, J., and to his daughter, R.; his wife, "after the death of R., the lands to be equally divided between J. and the heirs of R.'s body": *Held,* the intent of the testator, as gathered from the will, was to give to each of the beneficiaries, J. and R., an undivided equal interest in the lands to be held in common, excluding the construction they were to take the estate in entireties; the survivor, as between husband and wife, taking the whole; and should the proper construction be to give a life estate in the land to R., the same result would follow, the words, "heirs of her body," being manifestly used to separate and mark

the estate of the remaindermen from that of J., the other tenant in common, the words employed being considered as "heirs general," under the statute (Revisal, sec. 1578), converting R.'s estate into a fee simple. *Ford v. McBrayer*, 171 N. C., 421, cited and distinguished.

SPECIAL PROCEEDINGS for partition of land, transferred to civil issue docket of Superior Court of IREDELL County, and tried on a plea of sole seizin by defendant, before *Justice, J.,* and a jury, at May Term, 1917, of said court.

Verdict and judgment for defendant, and plaintiff excepted and appealed.

*C. Monroe Adams* for plaintiff.
*R. T. Weatherman, J. H. Burke,* and *W. D. Turner* for defendant.

HOKE, J. The relevant and controlling facts were admitted by the parties to be as follows:

That Tilghman Holland and Sarah Holland, his wife, are dead, leaving a last will and testament, duly admitted to probate, and in which the land in controversy, and the true title thereto, is disposed of as follows:

"We give and bequeath unto our beloved son-in-law, Jeremiah J. Rhyne, and our beloved daughter, Ruth A. Rhyne, all our real estate, it being 87 acres of land in one farm, to be the same, more or less, and all our personal property whatever may be on hand at our death, after our funeral expenses and just debts is paid. We want, after Ruth A. Rhyne's death, the land to be divided equally between Jeremiah J. Rhyne and the heirs of Ruth A. Rhyne's body. The said J. J. Rhyne is to pay William Holland, our oldest son, $50, and Nathaniel Holland's two children, James W. Holland and Sarah M. Holland, $25 apiece, and Sarah R. Frazier $50 at our decease, then the rest to be his, as above written. We also appoint Jeremiah J. Rhyne sole executor of this our last will and testament."

That Jeremiah J. Rhyne and Ruth A. Rhyne, the parties mentioned in said will, are both dead, and that the plaintiff, Carolina Eliza White, is the only heir at law of Ruth A. Rhyne, a daughter by a former husband, there being no children born to Jeremiah J. Rhyne and Ruth A. Rhyne during their marriage. That Jeremiah J. Rhyne predeceased Ruth A. Rhyne by four months. That the defendant, Mary Leonora Goodwin, is in the possession of the land in controversy, having entered by virtue of deed, executed by J. J. Rhyne and his wife, Ruth A. Rhyne, dated 15 February, 1915, and recorded 8 March, 1915, in Book 51, page 294, which deed was offered in evidence. It is admitted that said deed is in usual form for a fee simple title to said land, and that it conveyed whatever interest Jeremiah J. Rhyne and Ruth A. Rhyne had in the

land at the time of its execution, and waives the necessity of sending the deed up in full as part of the record. ·That the conditions mentioned in said will were performed by J. J. Rhyne by the payments provided therein.

And upon these facts we are of opinion that the cause has been correctly decided. In *Highsmith v. Page,* 158 N. C., 226, approved on this point in *Eason v. Eason,* 159 N. C., 540, it was held, among other things, that "While in a conveyance of lands to husband and wife jointly they will take and hold the estate by entireties, the survivor taking the whole, this character of an estate is not created when it appears by construction from the conveyance that it was not so intended, but that the parties were to take and hold their interests as tenants in common." The position should prevail also in the interpretation of wills, and, applying the principle, the present instrument, in the first clause, would convey· to the devisees an estate by entireties, but in the second clause, "We want, after Ruth A. Rhyne's death, the land to be divided between Jeremiah J. · Rhyne and the heirs of Ruth A. Rhyne's body," it is clearly the intent of the devisors that the right of survivorship should not attach. This is the evident purpose and purport of the second clause; and, construing the will as a whole, its effect is to pass to the devisees an estate in equal interests, as tenants in common. *McCallum v. McCallum,* 167 N. C., 310; *Taylor v. Brown,* 165 N. C., 161; *Fellows v. Durfey,* 163 N. C., 305.

And if this will, by correct construction, shall be held in its terms to convey to Ruth a life estate in her share, the result is the same, for the remainder, being to the heirs of her body, made equivalent by our statute to "heirs general" (Revisal, sec. 1578), the rule in *Shelley's case* would apply, and she would take and hold the absolute ownership of her share. *Cohoon v. Upton,* at the present term. True, in the disposition of our courts to restrict the application of the rule in *Shelley's case,* referred to by *Justice Allen* in the recent decision of *Ford v. McBrayer,* 171 N. C., 421, it has been held that when an estate has been limited to one for life, remainder to his heirs or the heirs of his body, to be equally divided between them, these words, "to be equally divided," will prevent the operation of the rule, the reason therefor being fully stated by *Pearson, J.,* in *Ward v. Jones,* 40 N. C., 400, but the position applies only when these words referred to are used to affect and qualify estate of the remaindermen, and not, as in this instance, when they are manifestly used to separate and mark the estate of such remaindermen in equal interest from that of the other tenant in common.

In many decisions of our Court the rule in *Shelley's case* is fully recognized as a principle in our law of real property, and the words of the present devise, "to be equally divided," being used to designate a division between the one-half interest of the husband and that ·of the

other takers, there is nothing in this instance to prevent the operation of the rule, and, the devisees, J. J. Rhyne and his wife, Ruth, evidently the primary objects of the testator's bounty, holding under the devise in absolute ownership, their conveyance to defendant passed the entire estate.

The opinion of his Honor to that effect finds support in *Cohoon v. Upton, supra; McSwain v. Washburn,* 170 N. C., 363; *Robeson v. Moore,* 168 N. C., 388; *Jones v. Wichard,* 163 N. C., 241; *Price v. Griffin,* 150 N. C., 523; *Perry v. Hackney,* 142 N. C., 368; *Tyson v. Sinclair,* 138 N. C., 24, and many other cases on the subject to like effect.

It may be well to note that, from the facts agreed upon, it appears that the amounts charged on the share of J. J. Rhyne in favor of the other children of the devisors have all been paid.

There is no error, and the judgment below is affirmed.

No error.

BROWN, J., dissenting: I agree to the opinion of the Court as far as it holds that the will of Tilghman Holland and wife, Sarah, does not create an estate by entireties in Jeremiah Rhyne and his wife, Ruth. The context of the will plainly shows that it was intended that they should hold their several interests—whatever that interest may be—separate and distinct. But I cannot agree to the proposition that under the terms of the will Ruth Rhyne took an estate in fee under the operation of the rule in *Shelley's case.*

The language of the will is: "We give and bequeath unto our beloved son-in-law, Jeremiah J. Rhyne, and our beloved daughter, Ruth A. Rhyne, all our real estate (describing it). We want, after Ruth Rhyne's death, the land to be divided equally between Jeremiah J. Rhyne and the heirs of Ruth A. Rhyne's body."

It is to my mind perfectly plain, by the use of the words, "heirs of Ruth A. Rhyne's body," the testator meant the issue or children of Ruth A. Rhyne, and that he intended that his daughter should have her portion of the land during her lifetime, and after her death that it was to be divided between her children and her husband—that is to say, the children taking one-half and the husband taking one-half. It is a cardinal principle in the construction of wills to so construe them as to effectuate the plainly expressed intention of the testator. Where this intention is manifest, technical rules of law must give way. *Triplett v. Williams,* 149 N. C., 394. *McCallan v. McCallan,* 167 N. C., 310.

I think, under our decisions, the rule in *Shelley's case* is prevented from applying by the provision that the land is to be divided equally between Jeremiah Rhyne and the heirs of Ruth A. Rhyne's body after her death.

In the recent case of *Haar v. Schloss,* 169 N. C., 228, in referring to the effect of such a provision in a will, *Mr. Justice Allen* says:

"In *Mills v. Thorne,* 95 N. C., 364, which is affirmed in *Gilmore v. Sellars,* 145 N. C., 283, it was said that 'In England, ever since the leading case of *Jepson v. Wright,* 2 Bligh, 1, it has been held that the words, "equally to be divided," or "share and share alike," superadded to limitations to the heirs of the body, etc., do not prevent the application of the rule. But in this State it would seem that the superaddition of like words to the limitations to the heirs, or heirs of the body, or issue, do prevent the application of the rule'; and this has been the consistent ruling of this Court since the case of *Ward v. Jones,* 40 N. C., 400." See, also, *Midgett v. Midgett,* 117 N. C., 8; *Jenkins v. Jenkins,* 96 N. C., 254; *Howell v. Knight,* 100 N. C., 254; *Freeman v. Freeman,* 141 N. C., 97.

In *Jenkins v. Jenkins, supra,* article 5 of the will in question read: "I desire my daughter, Eliza Jane Jenkins, to have the use of all the balance of my estate, including lands, negroes, stock of all kinds, household, etc., during her natural life, and at death to be equally divided among the heirs of her body"; and in this case the words, *"to be equally divided,"* was held to prevent the application of the rule, and cited *Mills v. Thorne* and *Ward v. Jones.*

The Chief Justice concurs in this dissent.